**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. AW-08-1503 |
| PHILIPS OZOEMENA OKEKE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION

Plaintiff brings this action under Section 340(a) of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1451(a), to revoke Defendant's citizenship and cancel his certificate of naturalization.  Currently pending before the Court is Plaintiff's Motion for Summary Judgment (Docket No. 16).  The Court has reviewed the entire record as well as the pleadings with respect to this motion and finds that no hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated more fully below, the Court will GRANT Plaintiff's Motion for Summary Judgment.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a native and citizen of Nigeria, entered the United States on a B-2 visitor's visa on July 16, 1991.  By way of his marriage to Monique Peacock, a United States citizen, he became a lawful permanent resident on April 27, 1993.

The following year, on October 9, 1994, Defendant was arrested and charged with assault and battery relating to a domestic violence incident.  Sometime after the incident, police officers from the Takoma Park Police Department came to his residence looking for him and took him to

a police station where they photographed him and took his fingerprints for the alleged assault and battery incident.  Defendant spent one night in jail and was then released on bond the next day.  On January 23, 1995, the assault and battery charge was placed on the Prince George's County District Court's "stet" docket.[1]

Later that year, on October 14, 1995, Defendant filed an Application for Naturalization (Form N-400) with the Immigration and Naturalization Services ("INS").   The application asked if Defendant had "ever knowingly committed any crime for which [he had] not been arrested . . . or been arrested, cited, [or] charged . . . ." (Pl.'s Mem. Supp. Summ. J., Ex. 3).   Defendant checked the "no" box.  Defendant signed the Form N-400 under penalty of perjury that his statements were true to the best of his knowledge and belief.  The following year, on March 14, 1996, the INS conducted a naturalization interview with Defendant to verify the contents of Defendant's Form N-400.   When asked about his criminal and arrest record, Defendant confirmed that his "no" answers were correct.  The interviewer indicated Defendant's answers by writing "claims no arrest record" next to Defendant's answers on the Form N-400.

Three days later, on March 17, 1996, Defendant sexually assaulted an eleven-year-old girl.  The Prince George's County Arrest Report states that Defendant engaged in forced intercourse with the child victim.  On April 1, 1996, the State of Maryland charged Defendant with the crime of second degree rape.   On May 7, 1996, Defendant was indicted by a grand jury for one count of second degree rape, two counts of fourth degree sex offense, and one count of battery.  Defendant pled not guilty to the charges on May 20, 1996.

About a month later, on June 22, 1996, Defendant received a Notice of Naturalization Oath Ceremony (Form N-445) from the INS by mail.  The Form N-445 notified Defendant to

---

[1] Under Maryland Court rules, a "stet" on the docket "indefinitely postpone[s] trial of a charge."  Md. R. 4-248 (2008).  The stetted charge "may be rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown."  *Id.*

appear for a Naturalization Oath Ceremony on July 9, 1996, and asked whether Defendant had "knowingly committed any crime or offense, for which [he had] been arrested, cited, [or] charged . . . ."  (Pl.'s Mem. Supp. Summ. J., Ex. 4).  Defendant marked the "no" box, certified that his answers were true and correct, and returned the form to the INS on July 9, 1996, immediately before his swearing-in ceremony.

Almost a year later, on May 14, 1997, Defendant was convicted of two counts of fourth degree sex offense and one count of battery.  On August 5, 1997, Defendant was sentenced to a total of thirty-six months imprisonment for two counts of fourth degree sex offense and one count of battery.  Defendant was sentenced to six months imprisonment for each of the two fourth degree sex offenses and two years for the battery offense, all to be served consecutively.

On June 10, 2008, Plaintiff filed a Complaint against Defendant seeking to revoke and set aside the order admitting the Defendant to citizenship and to cancel the Defendant's certificate of naturalization.  On March 31, 2009, Plaintiff filed a Motion for Summary Judgment.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed

and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.   ANALYSIS

Under the Immigration and Nationality Act (INA or "Act"), an individual who has obtained U.S. citizenship through naturalization and not birth can lose his or her citizenship through denaturalization or revocation of naturalization. 8 U.S.C. § 1451 (2006). Section 340(a) of the Act allows United States Attorneys to institute proceedings in federal district court for the purposes of revoking and setting aside the order of citizenship and canceling the certificate of naturalization. 8 U.S.C. § 1451(a). The Act provides that a federal district court can revoke an individual's naturalization if it was (a) illegally procured, or (b) procured by concealment of a material fact or willful misrepresentation. *See id.*

After reviewing the record, the Court concludes that Plaintiff has met its burden on summary judgment and that Defendant has not proffered sufficient evidence to show that a genuine issue of material fact exists. The record shows that Defendant lacked good moral character during the statutory period for obtaining naturalization and thus illegally procured his naturalization. In addition, the record shows that Defendant, on multiple occasions, willfully concealed material facts regarding his arrest history which would have rendered him ineligible for naturalization. Because Defendant cannot survive summary judgment on either counts, this Court GRANTS Plaintiff's Motion for Summary Judgment.

### A.  Illegal Procurement of Naturalization: Establishing Good Moral Character

Plaintiff alleges that Defendant procured his citizenship illegally because he was not statutorily eligible for citizenship during the application process.   The order admitting an individual to citizenship may be revoked and his or her certificate of naturalization canceled on the ground that the order and certificate were illegally procured.  8 U.S.C. § 1451(a) (2006). Citizenship is illegally procured if some statutory requirement that is a condition precedent to naturalization is not met during the naturalization process.  *See Kungys v. United States*, 485 U.S. 759 (1988).   Under the INA, an applicant seeking naturalization must show that "during all periods referred to in this subsection [he or she] has been and still is a person of good moral character."  8 U.S.C. § 1427(a)(3).   The relevant statutory period for showing good moral character is five years before and after filing a naturalization application.  *Id.*

The INA does not define "good moral character" but the regulations provide that claims of good moral character should be evaluated on a case-by-case basis.   *See* 8 C.F.R. § 316.10(a)(2).   There are several ways an applicant can be precluded from establishing good moral character.   First, an individual lacks good moral character if he or she has been convicted of or has admitted to committing acts constituting a crime involving moral turpitude.   *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I).   Second, even if the applicant does not commit a crime of moral turpitude, the government can still revoke an individual's citizenship if he or she "[has] committed unlawful acts that adversely reflect upon the applicant's moral character," unless the applicant can establish extenuating circumstances.  8 C.F.R. § 316.10(b)(3)(iii).   And third, an individual cannot establish good moral character if he or she has been convicted of an aggravated felony.  8 C.F.R. § 316.10(b)(1)(ii).

### i.   <u>Crimes Involving Moral Turpitude</u>

Plaintiff contends that Defendant's sexual assault on an eleven-year-old girl constitutes a crime involving moral turpitude for the purposes of revoking Defendant's naturalization. Defendant argues that he has not been convicted of or admitted to committing any act that would amount to a crime involving moral turpitude.

The INA and its implementing regulations state that an individual lacks good moral character during the statutory period if he or she commits a crime involving moral turpitude for which he or she is convicted.  *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I); 8 C.F.R. § 316.10(b)(2)(i). In *United States v. Jean-Baptiste,* 395 F.3d 1190 (11th Cir. 2005), the Eleventh Circuit held that even if an individual is convicted for the crime of moral turpitude *after* naturalization, the individual will still lack the requisite good moral character if he or she commits the crime during the statutory period.  *Id.* at 1196.  Defendant asks the Court to disregard the holding from the *Jean-Baptiste* case because it has not been published in any federal circuit or district court opinions and is thus not controlling precedent.  The Court, however, finds *Jean-Baptiste* persuasive and will follow the Eleventh Circuit's holding in that case as it has been favorably cited by multiple federal courts in published decisions.

The INA also has a de minimus exception to the crimes enumerated in the Act, which applies to "petty crimes" committed by an alien who (1) has committed only one crime, (2) is convicted for a crime with a maximum penalty of one year imprisonment, and (3) was sentenced to imprisonment for less than six months.  *See* 8 U.S.C. § 1182(a)(2)(A)(ii)(II).

Acts of improper sexual conduct between an adult male offender and a child have generally been held to be crimes involving moral turpitude.  Although the Fourth Circuit has not explicitly ruled on the issue, at least five different federal circuit cases support the proposition that sexual assaults on a child are crimes of moral turpitude.  *See, e.g.*, *Petsche v. Clingan*, 273

F.2d 688 (10th Cir. 1960).  To determine whether a crime involves moral turpitude, a reviewing court should "ask[] whether a crime is vile, base or depraved and violates societal moral standards."  *United States v. Santacruz*, 563 F.3d 894, 896 (9th Cir. 2009) (citing *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1074 (9th Cir. 2007)).  The Supreme Court has described sexual abuse of a minor as "an act repugnant to the moral instincts of a decent people."  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002).

Based on the Defendant's criminal record, the Court finds that the Defendant did not possess good moral character during the statutory period and that his naturalization was thus illegally procured.  Defendant sexually assaulted an eleven-year-old girl just days after his interview with the INS and months before he was sworn in as a citizen.  His sexual offenses thus clearly fall under the statutory period of five years.  Further, even though Defendant was convicted for these offenses after his naturalization, under the holding of *Jean-Baptiste*, his offenses during the statutory period preclude him from establishing his good moral character.

To argue, as Defendant attempts to, that the sexual molestation of an eleven-year-old girl for which he was later criminally convicted of does not constitute a crime of moral turpitude is a proposition that this Court is not going to accept.  Defendant was found guilty of two fourth degree sex offenses, both involving unlawful contact with an eleven-year-old girl's body parts.[2] Defendant was also found guilty of battering an eleven-year-old child and sentenced to two years imprisonment for his sexual misconduct.  "Crimes of moral turpitude" are understood in both criminal and immigration contexts to include base acts that are contrary to moral standards.  This Court finds that Defendant's unlawful contact with the eleven-year-old girl constitutes a

___

[2] Docket entries for Defendant's criminal trial for the sexual assault and battery incident in 1996 indicate that Defendant was found guilty of two fourth degree sex offenses – one involving contact with the breast and the other with genitalia –  for which he was sentenced to a total of twelve months.  Defendant was also found guilty of battery and sentenced to two years imprisonment.

crime of moral turpitude because sexual abuse of a minor is a base and depraved crime that violates society's mores and values.  This Court will not address Defendant's argument that, because his assault and battery charge was "stetted" in 1994, the 1994 charge could not have prevented him from demonstrating good moral character.  Defendant's sexual assault on a minor in 1996 sufficiently satisfies the INA criteria for a crime of moral turpitude.

In addition, the INA's "petty offense" exception is inapplicable to Defendant because he was sentenced to more than six months imprisonment for his crimes.  Even though the maximum penalty for fourth degree sex offenses in Maryland is one year imprisonment, Defendant does not qualify for the de minimus exception under the INA because he was sentenced to two six month imprisonment terms—which were to be served consecutively—for crimes arising from the same incident.

Therefore, the Court finds that Defendant lacked good moral character during the statutory period because his sexual assault on an eleven-year-old child was a crime involving moral turpitude.

### ii.    Extenuating Circumstances

Defendant relies on the INA's "catch-all" provision to suggest that there *may* have been extenuating circumstances at the time of the sexual assault that could preclude a finding that he lacked good moral character during the statutory period.  Defendant contends that it is mere speculation to assume the absence of extenuating circumstances.  Plaintiff argues that the extenuating circumstances analysis is irrelevant because Defendant's crimes are crimes of moral turpitude and not merely "unlawful acts that adversely reflect upon" his moral character.

The INA's regulations provide that an alien lacks good moral character if, during the statutory period, the alien "[c]ommits unlawful acts that adversely reflect upon the applicant's moral character," unless the applicant can establish extenuating circumstances.  8 C.F.R. §

1101(f).  To establish extenuating circumstances, the alien must show that the circumstances are relevant to the showing of good character and not to the consequences of denaturalization. *United States v. Jean Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005).  The INA's "catch-all" provision was intended to cover non-moral turpitude crimes and to allow "the former INS to set forth 'other reasons' affecting determinations of good moral character."  *Id.* at 1194.

Defendant's argument that extenuating circumstances *could* have been present at the time of the crime is flawed for two reasons.  First, the Defendant, not the government, has the burden of showing whether he faced extenuating circumstances at the time of the crime.  *See United States v. Lekarczyk*, 354 F. Supp. 2d 883, 887 (W.D. Wis. 2005).   Defendant seems to suggest that the government and the Court should consider the possibility of extenuating circumstances instead of denying the possibility altogether.  The Court has no reason to do this without Defendant raising this possibility first.

Second, there is no evidence in the record that Defendant asserted or attempted to assert any of these extenuating circumstances during his naturalization process.  In responding to Plaintiff's Motion for Summary Judgment, Defendant has not asserted nor has he attempted to explain any circumstances that he might have faced at the time of the crime.

Therefore, because Defendant has not proffered any evidence of extenuating circumstances that could mitigate the effect of his unlawful act on his good moral character, this Court finds that Defendant has not established extenuating circumstances as required under the regulations.  In any event, even assuming for the sake of argument that Defendant could establish extenuating circumstances, Defendant would still be unable to satisfy the good moral character requirement because of this Court's finding that his crime was one of moral turpitude and an aggravated felony under the INA.

### iii.   <u>Aggravated Felony</u>

Defendant also fails to meet the statutory requirements for good moral character because his sexual assault on a minor was an aggravated felony.  Defendant contends that his fourth degree sex offense convictions were not aggravated felonies and points to the lack of controlling precedent in this Circuit that a fourth degree sex offense in Maryland is an aggravated felony.

Under the INA, an alien convicted of an aggravated felony is deportable.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (2006).  The Act defines the term "aggravated felony" to include, among other offenses, "murder, rape, or sexual abuse of a minor."  8 U.S.C. § 1101(a)(43)(A).  In *Gattem v. Gonzales*, 412 F.3d 758 (7th Cir. 2005), the Seventh Circuit ruled that an individual's conviction in state court for a misdemeanor sexual assault offense on a minor was an aggravated felony because it involved the element of "persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct."  *Id.* at 763.

Here, the crime of which Defendant had been convicted constituted "sexual abuse of a minor," and for that reason qualifies as an "aggravated felony" for INA purposes.  The Court acknowledges that the Fourth Circuit has not expressly ruled on whether fourth degree sex offenses qualify as aggravated felonies; however, this Court finds the test established by the Seventh Circuit in *Gattem v. Gonzales* persuasive and holds that Defendant's conduct toward the eleven-year-old girl had an inherent risk of coercion and can thus be considered an aggravated felony under the INA.  Accordingly, the Court finds that Defendant's convictions for sexually assaulting a minor constituted an aggravated felony and thus rendered him ineligible for naturalization during the statutory period.

### B.  Concealment of a Material Fact and Willful Misrepresentation

Plaintiff also argues that Defendant's naturalization should be revoked because

Defendant misrepresented and concealed material facts by failing to disclose his criminal conduct and arrest record throughout the naturalization process.  A court can revoke a citizen's naturalization if the government can show that the citizen's naturalization was procured by concealment of a material fact or by willful misrepresentation.  *See* 8 U.S.C. § 1451(a).  In a denaturalization proceeding, the government has the burden of showing that (1) the naturalized citizen misrepresented or concealed some fact, (2) the misrepresentation or concealment was willful, (3) the fact was material, and (4) that the naturalized citizen procured citizenship as a result of the misrepresentation or concealment.  *See Kungys v. United States*, 485 U.S. 759, 767 (1988).  Defendant concedes that he misrepresented or concealed some material fact and that he procured citizenship as a result of his misrepresentation or concealment.  What remains for the Court to consider is the issue of whether his misrepresentation or concealment was willful.

**iv.**   <u>**Willful Misrepresentation**</u>

Defendant contends that Plaintiff has not proffered sufficient evidence to show that Defendant's misrepresentation to the INS regarding the 1994 domestic assault and battery incident was willful.  Defendant raises the possibility that he may not have realized that he had been legally "arrested" and that he may have realized it years after he was naturalized.  Plaintiff argues that it is highly unlikely that Defendant was unaware that he was being arrested.

The element of willfulness is satisfied by a finding that an applicant for naturalization was aware of a fact and that he or she misrepresented that fact deliberately and voluntarily.  *See United States v. Reve*, 241 F. Supp. 2d 470, 477 (D.N.J. 2003) (holding that an alien's misrepresentation regarding a prior arrest was willful because he provided false answers on his application and also failed to correct those answers while his application for naturalization was pending).  Although the burden lies with the government at all times, the government is not required to submit proof of the alien's intent to deceive, "rather, knowledge of the falsity of the

11

misrepresentation will suffice." *Mwongera v. Immigr. & Natu. Serv.*, 187 F.3d 323, 330 (3d Cir. 1999).

The Court finds that Defendant has not proffered sufficient evidence to compel a reasonable fact finder that his misrepresentation to the INS regarding his 1994 arrest was not willful. Defendant argues that his misrepresentations could not have been willful if he had not realized at the time that he had already been arrested. The Court finds this argument unpersuasive. In his deposition, Defendant describes the events following the 1994 domestic assault and battery incident as an arrest for which he was fingerprinted, held in custody for a night, and then released by way of a bond payment made by his friends. Defendant himself characterizes the events as an arrest. In addition, Defendant has not proffered any evidence to support the theory that he may not have realized *at the time* he was under arrest. Nothing in the record shows that Defendant was not aware that he was being arrested at the time. The Court therefore finds that Plaintiff has met its burden as to the willful requirement of the *Kungys* test and that Defendant's naturalization should be revoked.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will **GRANT** Defendant's Motion for Summary Judgment (Docket No. 16). A separate Order will follow.


    <u>November 25, 2009</u>                    <u>       /s/       </u>
            Date                                    Alexander Williams, Jr.
                                                  United States District Judge